# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **D.R.B., III, by his Next Friend,** ) | |
| **Lulonda Morrow,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 04-CV-396-CVE-PJC |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
|     **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Lulonda Morrow, on behalf of her minor son ("Claimant"), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Claimant's application for childhood Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. This case has been referred to the undersigned. For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

## SOCIAL SECURITY LAW AND STANDARD OF REVIEW

A child under the age of eighteen is disabled under the Social Security Act if that individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). Social Security regulations implement a three-step sequential process to evaluate a child's SSI disability claim. To find the claimant disabled, the ALJ must determine that (1) the child is not engaged in substantial gainful activity; (2) the child has an

impairment or combination of impairments that is severe, and (3) the impairment(s) meets or equals an impairment listed in Appendix 1 of Subpart P of C.F.R. Pt. 404 (the "Listings"). 20 C.F.R. § 416.924(a); *Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001).

In making the third determination, the ALJ must consider whether the impairment alone or in combination with another impairment medically or functionally equals a listing. 20 C.F.R. § 416.924(a). Medical equivalence means that the "medical findings are at least equal in severity and duration" to those set forth in the listing. 20 C.F.R. §416.926(a). To be functionally equivalent, an impairment must be of "listing-level severity"; *i.e.*, it results in "marked" limitations in two of six domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. §416.926a(a). [1] The ALJ considers all relevant factors including "(1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive setting; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment." *Briggs*, 248 F.3d at 1237-38. The six domains of functioning include "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. §416.926a(b)(1); *Briggs*, 248 F.3d at 1238.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was

---

[1] A "marked" limitation is one which seriously interferes with the claimant's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. §416.926a(e)(2)(i). A limitation is "extreme" if it very seriously interferes with the claimant's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. §416.926a(e)(3)(i). *Briggs*, 248 F.3d at 1238 n.1.

supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991).

Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2002) (citation omitted). In reviewing the decision of the Commissioner, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Id.* (citation omitted). Nevertheless, the court examines "the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determines if the substantiality of the evidence test has been met." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).

## CLAIMANT'S BACKGROUND

Claimant was born on April 15, 1992. (R. 216). He was nine years old when he filed his application for benefits and eleven years old at the time of the hearing on August 14, 2003.[2] (R. 52, 216-17). Plaintiff Lulonda Morrow claims that her son has been disabled since October 1, 2001 due to Attention Deficit Hyperactivity Disorder ("ADHD"). (R. 58). Plaintiff testified that Claimant has difficulty with memory, speech and attention, as well as problems with anger. (R. 224-43).

On March 9, 2001, Claimant underwent Wechsler Intelligence Scale for Children-III ("WISC-III") testing which revealed a verbal IQ of 81, performance IQ of 91 and full scale IQ of 84, placing Claimant in the low average range of intellectual functioning. (R. 120-22).

---

[2] A prior hearing was held on February 10, 2003, where testimony was given by psychologist, Dr. Paula Monroe. (R. 199-211). At that hearing, Administrative Law Judge ("ALJ") Denzel Busick granted Plaintiff counsel's request that Claimant undergo further testing and adjourned the hearing.

In October 2001, Claimant's pediatrician, Walter Exon, M.D. diagnosed Claimant with ADHD and prescribed first Ritalin and then Adderall for treatment of the disorder. (R. 124-26, 134). Since that time, Claimant has continued on Adderall, later supplemented with Clonidine, for treatment of his attention deficit disorder and anxiety. (R.124-26, 167-73, 237-38).

On February 19, 2002, Claimant was evaluated by psychologist Marcella H. Sweet, Ph.D. (R. 141-48). Dr. Sweet noted that Claimant demonstrated no hyperactivity or problem sitting still, but that he "probably suffers from sleep deprivation, a parent-child relationship problem and a communication disorder." (R. 147). She recommended that he undergo speech and language, ophthalmologic and neurologic evaluations and continue to receive counseling services. (R. 148).

From February 2002 through January 2003, Claimant received counseling from psychologist Alan Conger, Psy.D.  (R.156-66). In April 2002, Dr. Conger reported that Claimant had problems with memory and anxiety that were interfering with his functioning at school and recommended that an IEP be performed to assess Claimant's difficulties. (R. 158). Dr. Conger's notes throughout 2002 reflect that Claimant was attending Sylvan Learning Center and making progress with his math and science skills, and his problems with memory, anger and anxiety were improving.  (R. 156-58).

On March 13, 2003, Claimant underwent speech and language testing administered by Karen Croley, M.S., CCC/L-SLP, ATP.  (R. 174-76).  Test results showed that Claimant's articulation, receptive language and expressive language skills were within normal limits. *Id*. Ms. Croley opined that Claimant's "prognosis for continued development of age-appropriate speech and language skills, without outside intervention, is judged to be good." (R. 176).

Claimant also underwent a consultative evaluation on March 18, 2003 by Robert Mackey, M.D. (R.189-93). Dr. Mackey observed that Claimant was "moderately hyperactive," but found no other physical or neurological abnormalities. (R.190). He noted that Claimant's mother complained that despite therapy Claimant continued to have problems with "his words getting mixed up," anxiety and focusing on his school work. (R. 189). Ms. Morrow also informed Dr. Mackey that Claimant's teachers and his doctor suggested that Claimant might be having "spaced out" spells that were actually seizures, but due to financial concerns, further investigation would have to be put on hold. (R. 189). Although Dr. Mackey observed that Claimant's speech "does get a bit rambling and misses words," he found that "[d]evelopmentally [Claimant] accomplished all required tasks for a ten and eleven-year-old." (R. 190).

Consultative ophthalmologic and otologic examinations and evaluations of Claimant in March 2003 showed normal function. (R. 194-97).

Medical expert, psychologist Paula Wood, Ph.D., opined at the hearing that Claimant's ADHD and adjustment disorder with anxiety were being treated with medication and psychotherapy and that the impairments did not meet, equal or functionally equal a listing. (R. 244).

## **PROCEDURAL HISTORY**

Claimant filed an application for childhood SSI benefits on October 16, 2001 alleging disability since October 1, 2001. (R. 52-79). After he was denied benefits initially and on reconsideration, a hearing was held before ALJ James Jordan on August 14, 2003. (R. 212-49). The ALJ issued a decision on August 25, 2003 finding that Claimant was not disabled at any time through the date of decision. (R. 11-16). On March 3, 2004, the Appeals Council declined

to review Claimant's case. (R. 4-6). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 42 U.S.C. § 405(g).

## REVIEW

In his decision, the ALJ found that Claimant had not engaged in substantial gainful activity and that Claimant's ADHD and adjustment disorder with anxiety were severe impairments. (R. 12, 16). He, however, found that these impairments alone or in combination did not meet or medically equal a listing, specifically Listings 112.04 (mood disorders) and 112.11 (ADHD). (R.12). The ALJ further determined that the evidence supported medical expert Dr. Monroe's opinion that Claimant lacked any marked or extreme limitation in any of the six domains. (R. 12-16). Accordingly, he concluded that Claimant was not disabled at any time through the date of the decision.

Plaintiff cites as error that the ALJ failed to properly consider and develop the medical record. Specifically, Plaintiff asserts that the ALJ erred in determining that Claimant's "spaced out" episodes had not been documented and that Claimant had "no expressive language deficit," and in failing to have a qualified psychiatrist or psychologist complete a mental residual functional capacity ("RFC") assessment of Claimant. The Court finds no error.

Plaintiff first argues that the ALJ incorrectly understood Dr. Mackey's consultative evaluation as concluding that Claimant's "spaced out" episodes had not been documented when Dr. Mackey actually found that the episodes were documented and though they were suspected to be seizures, funding did not allow further testing. The ALJ stated the following regarding Dr. Mackey's evaluation:

> The claimant underwent consultative neurological evaluation on March 18, 2003 by Robert Mackey, M.D. The claimant's mother stated that the claimant has

6

> "spaced out" spells and might be having seizures. Neurological examination was entirely normal and Dr. Mackey noted that seizures had never been documented and developmentally, the claimant had accomplished all required age- appropriate tasks.

(R. 14). The ALJ's discussion accurately reflects Dr. Mackey's evaluation. As the ALJ stated, Dr. Mackey did determine that Claimant's "spaced-out" episodes "have never been documented as seizures." (R. 193). Dr. Mackey also recited that Claimant's neurological examination was normal and "[d]evelopmentally he accomplished all required tasks for a ten and eleven-year-old." (R. 190).

Plaintiff also asserts that the ALJ misinterpreted Ms. Croley's consultative speech and language evaluation of Claimant. The ALJ discussed this evaluation on page 3 of his decision:

> The claimant underwent consultative speech and language evaluation on March 13, 2003, by Karen Croley, M.S., CCC-SLP. The claimant was noted to be cooperative and fairly attentive. There were no hearing deficits noted. Multiple tests were [sic] given demonstrated that the claimant had no articulation skill deficit, no receptive language deficit, and no expressive language deficit. Ms. Croley stated that claimant had age-appropriate skills.

(R. 13). Plaintiff contends that the ALJ erred in finding that Claimant had "no expressive language deficit" as Ms. Croley observed in her report that "[a]pproximately 75% of [Claimant's] spontaneous speech was intelligible when the context was unknown; intelligibility improved to approximately 90% when the context was known." (R. 174).

The Court finds that the ALJ properly reviewed Ms. Croley's evaluation. Although Ms. Croley noted her initial observation regarding the intelligibility of Claimant's speech, as the ALJ correctly states, she concluded upon testing that Claimant's articulation, receptive language and expressive language skills were within normal limits. (R. 176). Further, Ms. Croley opined that

the Claimant's "prognosis for continued development of age-appropriate speech and language skills, without outside intervention, is judged to be good." *Id*.

Finally, Plaintiff objects that the ALJ failed to have a qualified psychologist or psychiatrist complete a mental RFC assessment of Claimant. Plaintiff contends that such is mandated by 42 U.S.C. §421(h) which provides:

> [a]n initial determination . . . that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

42 U.S.C. §421(h); *Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1049-50 (10th Cir. 1993)(finding that the ALJ abused his discretion in "assessing claimant's residual functional capacity without making any effort to obtain the assistance of a mental health professional").

The Court finds no error. First, a RFC assessment is not made in a childhood disability case; rather, a functional equivalence assessment is made. In any case, assuming without deciding that §421(h) is applicable to the ALJ's evaluation of Claimant's childhood disability claim, there is "no absolute duty" under §421(h) for the Commissioner or the ALJ to have a psychologist or psychiatrist complete the analogous functional equivalence form. *Andrade*, 985

F.2d at 1050; *Bernal v. Bowen*, 851 F.2d 297, 302 (10th Cir. 1988).[3]   The purpose of §421(h) is "to ensure the availability of 'mental health specialists' in mental impairment cases" and that purpose has been amply met here.  *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990).  The ALJ not only considered the psychological evaluations of Claimant by psychologists Dr. Conger and Dr. Sweet in support of his findings, but he expressly relied on the testimony of psychologist Dr. Monroe in assessing Claimant's functioning in the applicable six domains: "The ALJ fully considered the claimant's functioning in each domain and finds that the evidence fails to establish the necessary marked or extreme limitation required for functional equivalence (as per Dr. Monroe's testimony)". (R. 13).  Based on the Claimant's medical records and the testimony at the hearing, expert witness Dr. Monroe opined that Claimant did not meet, equal or functionally equal a listing. (R. 244).  She noted that although Claimant had some limitations due to his ADHD and adjustment disorder with anxiety, he was being treated with medication and psychotherapy and did not have any limitation in "adaptive functioning." (R. 243-44).  In short, there is substantial evidence which supports the ALJ's determination of Claimant's mental impairments.   Further, Plaintiff has cited no evidence seriously challenging the ALJ's assessment of Claimant's mental functional capacity.   *See Bernal*, 851 F.2d at 302 (finding no

---

[3] *Andrade* and *Bernal* involved adult mental disability claims which require the assessment of the claimants' residual functional capacity ("RFC").  In assessing adult mental impairments under the applicable regulations, a standard document called a Psychiatric Review Technique ("PRT) Form is completed by a medical or psychological consultant at the initial and reconsideration levels. 20 C.F.R. §416.920a(e)(1).  "At the ALJ hearing level, the regulations allow the ALJ to complete the PRT form with or without the assistance of a medical advisor and require the ALJ to attach the form to his or her written decision." *Cruse v. United States Dep't of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995). The ALJ must, however, discuss in the decision the evidence considered in reaching the conclusions in the PRT form. *Id*. at 617-18.
The evaluation of child disability claims does not involve a RFC assessment or the use of a PRT form. *See* 20 C.F.R. §§416.924a and 416.926a.

error in the ALJ completing the case review and RFC assessment without the assistance of a mental health professional as the record lacked any evidence seriously challenging the ALJ's assessment). The Court finds no violation of any duty under §421(h).

## **RECOMMENDATION**

For the reasons stated above, the Court finds that the decision of the Commissioner is supported by substantial evidence, and the correct legal standards were applied. Based upon the foregoing, the undersigned recommends that the decision of the Commissioner denying disability benefits to Claimant be AFFIRMED.

## **OBJECTIONS**

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this Report and Recommendation, but must do so within ten days after being served with a copy of this Report and Recommendation. If specific written objections are timely filed, the District Judge assigned to this case will make a *de novo* determination in accordance with Rule 72(b). A party waives District Court review and appellate review by failing to timely file objections. *In re Key Energy Resources Inc.*, 230 F.3d 1197 (10th Cir. 2000).

Dated this 28th day of November, 2005.

_____
Paul J. Cleary
United States Magistrate Judge